## UNITED STATES *v.* TERRY.

*(District Court, N. D. California.   March 24, 1890.)*

**OBSTRUCTING JUSTICE—EXECUTION OF ORAL ORDER.**
Under Rev. St. U. S. § 5398, which makes it a criminal offense to resist the execution of "any mesne process or warrant or any rule or order of any court of the United States," resisting a marshal in his execution of an oral order of the court to remove from the court-room a person who has disturbed the proceedings of the court is indictable.

At Law.

*John T. Carey,* U. S. Atty., and *Davis Louderback,* Special Asst. U. S. Atty.

*Patrick Reddy, W. W. Foote,* and *N. C. Coldwell,* for defendant.

Ross, J.   The defendant, by the indictment in this case, is charged with resisting the United States marshal for this district in the execution of an order made by the United States circuit court, in open court, and in the presence of the defendant and of the marshal, directing that officer to remove the defendant from the court-room by reason of her gross misbehavior therein, consisting of loud, boisterous, and insulting language by her addressed to the circuit justice, then presiding in said court, and then engaged in the determination of a cause then pending therein.   In his opening statement to the jury, the district attorney stated, what is the undoubted fact, that at the time of the alleged execution of the order, and of its alleged resistance by the defendant, it had not been put in writing, nor had there been any entry of it in the minutes of the court. Being an oral order, it is urged for the defendant that it is not embraced by section 5398 of the Revised Statutes of the United States, upon which the indictment is founded; and therefore that, upon the statement of the district attorney, there can be no conviction under the indictment, and the court should therefore now direct a verdict of not guilty.   It is not denied by defendants' counsel that the alleged conduct of the defendant constituted a contempt of the court for which she could have been, and in fact was, legally punished, and that the order for her removal from the court-room was a valid order, which the marshal was bound to execute; but their claim is that the section of the statute upon which the indictment is based does not make the resistance of any oral order a crime. The section reads as follows:

"Every person who knowingly and willfully obstructs, resists, or opposes any officer of the United States, in serving, or attempting to serve or execute, any mesne process or warrant, or any rule or order, of any court of the United States, or any other legal or judicial writ or process, or assaults, beats, or wounds any officer or other person duly authorized in serving or executing any writ, rule, order, process, or warrant, shall be imprisoned not more than twelve months, and fined not more than three hundred dollars."

The section is not a new one. It was originally enacted April 30, 1790, (section 22, 1 St. at Large, 117,) and was in existence many years before there was any statute defining contempts.   It meant precisely the same thing, when carried into the Revised Statutes, that it meant when enacted in 1790.   The first statute defining "contempts" was that of March 2, 1831, (4 U. S. St. at Large, 487,) which was a restriction upon the power of the courts to punish such offenses, and which provided "that the power of the several courts of the United States to issue attachments, and inflict summary punishments for contempt of court, shall not be construed to extend to any cases except the misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of the said courts in their official transactions, and the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, de-

cree, or command of the said courts." By the second section of the act of 1831 it was provided "that if any person or persons shall, corruptly, or by threats or force, endeavor to influence, intimidate, or impede any juror, witness, or officer in any court of the United States, in the discharge of his duty, or shall, corruptly, or by threats or force, obstruct or impede, or endeavor to obstruct or impede, the due administration of justice therein, every person or persons so offending shall be liable to prosecution therefor, by indictment, and shall, on conviction thereof, be punished by fine not exceeding five hundred dollars, or by imprisonment not exceeding three months, or both, according to the nature and aggravation of the offense;" thus making the acts therein defined a crime.

The first section of the act of 1831 was carried into the Revised Statutes as section 725, and its second section was therein substantially embodied as section 5399. There are many acts that constitute a contempt of court, and also a crime, under the statute defining crimes. Two cases that recently arose at Los Angeles furnish very good examples,—*Ex parte Cuddy* and *Ex parte Savin*, both of which are reported in 131 U. S. 280, 267, 9 Sup. Ct. Rep. 703, 699. In *Cuddy's Case*, for an attempt to tamper with a juror, he was cited to show cause why he should not be adjudged guilty of a contempt of court, and upon a hearing of the matter was adjudged guilty of contempt, and sentenced to imprisonment for six months. For precisely the same act he was subsequently indicted by the grand jury under that provision of the statute making it a crime to attempt to tamper with a juror, was tried upon the indictment, and convicted and punished. In *Savin's Case*, for an attempt to intimidate and then to bribe a witness, he was cited to show cause why he should not be adjudged guilty of contempt, and, upon a hearing of the matter, was adjudged guilty of contempt, and sentenced to imprisonment for one year. For precisely the same act he was subsequently indicted by the grand jury under that provision of the statute making it a crime to attempt to intimidate or bribe a witness, and is yet to be tried upon the indictment. Wherever the statute makes an act that constitutes a contempt also a crime, the fact that the party has been adjudged guilty of contempt, and punished therefor, is no bar to a prosecution under the criminal statute, and is to be considered only in so far as it is just and proper to consider it in imposing punishment for the crime, in the event of a conviction thereof. The sole question, therefore, now for decision, is whether the word "order," found in section 5398 of the Revised Statutes, and originally in the act of 1790, is to be limited to a written order.

Undoubtedly, in judicial proceedings, an "order," as contradistinguished from a "judgment," is often defined as one reduced to writing, and entered in the records of the court; and such is the purport of many of the cases referred to by counsel for the defendant. But that is by no means saying that such only is an order. There must, in the nature of things, be an order of a court made before it is, or can be, written out in the records of the court by the clerk. When written out, the writing becomes a record of the order, and is evidence of it. Orders are almost daily given to the marshal concerning matters to be per-

formed in the presence of the court, and they are as constantly executed before being written out. Indeed, many of them are never reduced to writing at all. Yet there can be no doubt of their validity. Now, the language of the statute in question is broad enough to include all valid oral orders. The natural, ordinary meaning of the word includes written, as well as unwritten, orders, and there is no reason in the policy of the law, or in the nature of things, for excluding unwritten orders. Indeed, the contrary is true. There is just as much reason and necessity for making it an offense to resist the execution of a lawful unwritten order, brought distinctly and authoritatively to the notice of the offending party, as for making it an offense to resist the execution of one in writing. Take the case where a defendant is alleged to have disturbed the proceedings of the court by loud and insulting language addressed to the presiding justice. Is it not as great an obstruction to the administration of justice; as grave an offense against the public peace; as serious a public injury,—to violently resist the execution of a valid verbal order of the court to remove the offending party from the court-room, made in his presence and hearing, as it would be to resist the execution of the same order after it is written down by the clerk, and a certified copy placed in the hands of the marshal? This question cannot reasonably receive any other than an affirmative answer. Why require written evidence of such valid order of which the party has actual, personal knowledge? In such a case, there is no reason for such requirement, whereas, in the suppositious cases put by counsel, such, for instance, as an attempt to execute a verbal order of which the party affected had not such actual, personal knowledge, reason would be on the other side, and the order to be executed would be required to be in writing. As has been said, the language of the statute, in its ordinary and usual signification, is broad enough to include the order in question, which falls within the mischief intended to be provided against. There is nothing technical in the language of the statute, or in the subject-matter. It is true that other words used in the statute, *ex vi termini,* import a writing, but this was not enough to reach all the mischief intended to be guarded against, and the word "order," of larger import, was, *ex industria,* introduced. A written order delivered to the marshal to execute, would be covered by other words found in the section, and there would therefore have been no necessity for the use of the word "order." The word "order," in the last clause, has full effect, by referring it to the "mesne process or warrant," before used, and as embracing final, as contradistinguished from mesne, process. That the order here in question is embraced by the policy that dictated the enactment of the law does not admit of any doubt, and for the court to exclude from its operation an order, otherwise valid, merely because it was not in writing, would clearly be to import into the statute a limitation not there found, and that, too, against the manifest policy of the law.

The case most relied upon by counsel for defendant in their argument,—that of *U. S.* v. *Tinklepaugh,* 3 Blatchf. 426,—while arising under the same section of the statute, did not involve the construction of

the word "order" at all, nor was the attention of the court in any manner attracted to it. The offense then under investigation was that of resistance to the marshal in the execution of a warrant in writing, and the language of the judge must, of course, be taken with reference to the case before the court. Thus considered, it is clear that that case does not touch the point here involved. A case more like the present one, although not entirely so, is that of *U. S.* v. *Lukins*, 3 Wash. C. C. 335. There the defendant was indicted under this same statute for resisting the deputy-marshal in executing process issued by the judge, and not by the court. It was contended that as the language of the statute is, "any mesne process," etc., "of the courts of the United States," and the process was not issued by a court, but by a judge, there was no offense under the act. In reply to that contention for such limitation of the statutory language, Justice WASHINGTON said:

"If this is the right construction of the law, the counsel for this defendant is entitled to all the merit of having made the discovery; for such a construction never before was given or contended for. If such a resistance is not an offense for which a person can be prosecuted, it is better that all the criminal law be struck out from the statute book, as it is there only to show the debility of the general government. * * * If no protection is given by the general government to their officers, it will require no prophet to show what will be the result of such an abandonment of all the rights of the United States. This is not the construction, and strong language would be necessary to show it to be." Id. 337, 338.

After a careful examination of the question, I am satisfied that the order involved in this case is embraced by the section upon which the indictment is founded, and therefore that the point made by counsel, which is, in effect, a motion to direct a verdict of acquittal upon the opening statement of the district attorney, should be, and therefore is, overruled.