[No. 23172. *En Banc.* February 19, 1932.]

BRIDGET E. SHAW, *Respondent,* v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, *Appellant.*[1]

*S. A. Keenan* and *Bundy & Swale,* for appellant.

*John F. Dore,* for respondent.

[1]Reported in 8 P. (2d) 431.

BEALS, J.—During the month of February, 1914, de-
fendant wrote a policy of insurance upon the life of
Henry J. Shaw in the sum of one thousand dollars.
Approximately two years later, defendant wrote a sec-
ond policy on Mr. Shaw's life, also in the sum of one
thousand dollars. The policies were payable to the
plaintiff, Bridget E. Shaw, the wife of the insured,
who brought this action, seeking recovery thereon.

In her complaint, plaintiff alleged the issuance of
the policies; the payment of all premiums thereon;
the fact that Henry J. Shaw and plaintiff were hus-
band and wife; that, during the month of December,
1921, Mr. Shaw left his home; that he never returned
thereto; and that he had never been heard of since.
Plaintiff further alleged that she had made a thorough
search for her husband, without discovering his where-
abouts. The action was instituted during the month of
April, 1929, plaintiff relying upon the legal presump-
tion that her husband was dead, he having been absent
and unheard of for over seven years.

By its answer, defendant admitted the issuance of
the insurance policies and the payment of all premiums
due thereon, but denied that the insured, Henry J.
Shaw, was dead. The action was tried to the court
sitting with a jury, the sole issue being the question
of whether the insured was dead or living. The jury
returned a verdict in favor of the plaintiff for the full
amount sued for, and from a judgment entered upon
this verdict defendant appeals.

This action was before us upon a prior appeal taken
by defendant from an order granting plaintiff's mo-
tion for a new trial, after a jury had returned a ver-
dict in favor of defendant (*Shaw v. Prudential Ins.
Co.*, 158 Wash. 43, 290 Pac. 694), this court holding
that the trial court correctly ruled that the jury had

been erroneously instructed. In the opinion, the law governing the particular situation here presented was clearly declared.

Appellant urges several assignments of error, and argues the same under five classifications: First, errors in law occurring at the trial and excepted to by appellant; second, misconduct of the trial court; third, misconduct of counsel for respondent by which appellant was deprived of a fair and impartial trial; fourth, insufficiency of the evidence to justify the verdict, and that the verdict is against the law and contrary to the evidence; and fifth, that the trial court erred in overruling appellant's motion for a new trial. We shall commence the discussion of the assignments of error rather in inverse order.

In regard to the fourth group of assignments of error, we are satisfied that the legal evidence presented by respondent was sufficient to carry her case to the jury, and to support a verdict in her favor.

A more serious question is presented by the assignments of error comprising the third group. Respondent, while on the stand testifying as a witness on her own behalf, stated that, about two years after her husband's departure, she called on the resident agent of appellant, taking with her the policies of insurance here in suit, for the purpose of discussing matters concerning the same and her future course of conduct in regard thereto. In his opening statement to the jury, counsel for respondent had stated that respondent had advised appellant's agent of the fact that her husband had left home and had been missing for two years, and had requested advice as to what she should do in connection with the policies of insurance; and that appellant's agent then informed her that, if she would pay the insurance premiums for a further period

of five years, making seven years in all, appellant, if Mr. Shaw were still absent, would then pay to respondent the face value of the policies; and that, relying upon this advice, respondent paid the premiums upon the policies up to the time of the institution of this action.

The trial court and appellant's counsel were, therefore, advised as to what respondent expected to prove in connection with her conversation with appellant's agent; and, after respondent had stated that she called at the office maintained by appellant, counsel for appellant called attention to the issues, as raised by the pleadings, and stated an objection to the introduction of any testimony along the line above indicated; whereupon respondent's counsel made the following statement:

"The purpose of the testimony is to show that, within two years, we gave notice to start a search, and we have been unable to find him. It is a circumstance that goes to show that the man is dead. In other words, it goes to show our good faith in the matter, that we did not wait seven years and demand payment, that we went to them as soon as we were satisfied ourselves, within two years after his departure, and asked them what we should do about it. And it shows that they had knowledge at all times for a period of four years that he had gone, and they had an opportunity to make a search for him."

The trial court indicated its opinion to the effect that respondent could show that she had notified appellant of her husband's absence, in which view the court was correct, but indicated that the matter of the payment of the premiums was covered by respondent's allegation and appellant's admission that all premiums had been paid. Respondent's counsel, in stating his avowed purpose in offering testimony as to respond-

ent's conversation with appellant's agent (excepting from this statement the remarks of respondent's counsel in his opening address to the jury), kept within the bounds of competent testimony, and court and counsel were entitled to rely upon counsel's statement and to assume that neither respondent herself nor her counsel would undertake to enlarge these bounds, without making some statement or propounding some question which would afford appellant an opportunity to be heard as to the admissibility of testimony along other lines.

After narrating the conversation between herself and appellant's agent, this question was propounded to respondent by her counsel:

"Did you have any talk with Mr. Wayne about keeping up the payments?"

to which respondent replied:

"No. But there was a Mr. Coleman and a Mr. Rice who were the agents, and they came out to the house and took my money for the policies. So I asked Mr. Coleman or Mr. Rice, and they both told me that at the end of seven years if I kept it up I could have my claim paid."

Appellant's counsel then objected to respondent's statement on the ground that the matter was not covered by the pleadings, and, after some argument back and forth, the following occurred:

"THE COURT: You may strike out that portion of it. Q. You did keep up the payment of those premiums right along, did you? A. Yes, with their assurance of payment. MR. KEENAN: I move that that be stricken out. THE COURT: That part may be stricken out."

Respondent did not, in her pleadings, attempt to allege any agreement between herself and appellant to the effect that, if she paid the premiums due on the

policy for seven years, appellant would then pay her the face value thereof; nor was anything of the sort even suggested in her complaint. Any such matter was, then, completely without the issues, and no such testimony as was given by respondent concerning her conversations with appellant's agents should have been admitted. The testimony was highly prejudicial, and was testified to by respondent herself in response to questions propounded to her by her own counsel after appellant had clearly stated its contention that no such testimony should be received, after respondent's counsel had excluded all such testimony from his statement of the scope of the testimony which he proposed to introduce, and after the trial court had intimated its opinion that the matter of the payment of the premiums was fully covered by the pleadings. It is true that the court ruled that some portion of respondent's testimony be stricken, but we are satisfied that the quite formal ruling of the court in this connection was not sufficient to correct the error occasioned by the testimony of respondent above referred to.

Respondent called as a witness one H. C. Ritzman, who testified that he had read in the morning paper some reference to the trial of the case, and that he thereupon voluntarily went to court and advised respondent's counsel, with whom he was not acquainted, as to certain facts within his knowledge, the witness having worked as Mr. Shaw's assistant for about a year and a half prior to the latter's disappearance. After testifying as to the length of time he worked under Mr. Shaw, the following occurred:

"Q. I will ask you if you know where and when he died? A. He was supposed to have died in China. Mr. Keenan: I object to the witness giving any suppositions. Mr. Dore: In this case this woman makes an investigation and it bears out the presumption we

are going to prove. We are going to prove by this witness that he does know where and when Shaw died. THE COURT: It is not what he supposes. It is what he knows. Q. What did anybody tell you about him? MR. KEENAN: I object to that. He cannot come here and testify as to what somebody else knows about it. MR. DORE: You mean he cannot in this kind of a case? MR. KEENAN: No, he cannot in this kind of a case. MR. DORE: There is a presumption that this man's absence being unexplained for seven years, that he is dead. It is permissible to show what letters she got from people. That has gone in. MR. KEENAN: This man may show any letters he has bearing on the subject. MR. DORE: He was going to prove what people told him who were present when he died. MR. KEENAN: You cannot prove death that way. THE COURT: Objection sustained. Q. Well, I will ask you if you communicated or had conversation with persons who were present at the time that Henry J. Shaw came to his death. MR. KEENAN: I object to that for the same reason, supposition upon supposition. That would not be evidence. If he died in some place they can easily find out whether he died there or not. MR. DORE: No, he could not. This man died in China. We are going to prove by a man who was there that told him that he saw him die. I make the offer. THE COURT: Objection sustained. MR. DORE: I will make the offer to show by this witness that this witness has information from a man who was present that Shaw died and where he died. MR. KEENAN: I object to that. It is hearsay, and incompetent, irrelevant and immaterial for any purpose. THE COURT: Objection sustained. MR. DORE: That is all, Mr. Ritzman.''

It will be noted that the first question propounded by respondent's counsel was, entirely proper, and called for a simple answer, Yes or No. The answer made by the witness was not responsive to the question, and clearly indicated that the witness had no knowledge concerning the matter of Mr. Shaw's supposed death, save possibly hearsay statements, which were incompetent as testimony in the case on trial.

Appellant's counsel stated his objection, and the court announced the correct rule, to the effect that the knowledge of the witness, not his suppositions, should be the subject matter of the inquiry. Notwithstanding this statement of the court, respondent's counsel asked the witness, "What did anyone tell you about him," to which question, after some discussion, the court sustained appellant's objection. Respondent's counsel then pursued the matter further, as hereinabove set forth, and, in the course of the discussion, stated:

"This man died in China. We are going to prove by a man who was there that told him [the witness] that saw him die. I make the offer."

The court sustained appellant's objection, and respondent's counsel restated the same matter in slightly different form, to which another objection interposed on behalf of appellant was sustained.

Assuming that respondent's counsel was not to blame for the first unresponsive, irrelevant and incompetent answer given by the witness, the conduct of respondent's counsel, in pursuing the matter after the court had ruled the testimony incompetent, in stating, in the presence of the jury, "This man died in China," and that respondent proposed to substantiate that statement by the testimony of the witness to the effect that someone had told the witness of the death, was grossly improper. If counsel, after the court had ruled, was of the opinion that such testimony was admissible, the matter should have been presented by way of an offer of proof in the absence of the jury. The answer of the witness and the subsequent statements of respondent's counsel were erroneous and highly prejudicial.

Appellant complains of an instruction of the trial court, to which, however, appellant preserved no sufficient exception.

The law of the case is clearly laid down in the opinion of this court on the prior appeal, above referred to, and we see no occasion for the further prolongation of this opinion.

In accordance with the rule laid down in the case of *State v. Tweedy,* 165 Wash. 281, 5 P. (2d) 335, and the authorities therein cited, a new trial should be granted. The judgment appealed from is reversed, with instructions to the trial court to grant appellant a new trial.

TOLMAN, C. J., MAIN, MITCHELL, HOLCOMB, and HERMAN, JJ., concur.

PARKER, J. (dissenting)—I dissent. I think that whatever error there may have been was amply cured and rendered without prejudice by the plain rulings of the trial court.

MILLARD and BEELER, JJ., concur with PARKER, J.