[File No. Cr. 112.]

STATE OF NORTH DAKOTA, Respondent, v. HERBERT G. LINDEMAN, Appellant.

(254 N. W. 276, 93 A.L.R. 1442.)

Opinion filed April 5, 1934.

*Chas. A. Lyche,* for appellant.

P. O. *Sathre,* Attorney General, and *W. B. Arnold,* State's Attorney, for respondent.

BURKE, J. On the 22nd day of June, 1933, the defendant was convicted of the crime of engaging in the liquor traffic. He promptly appealed from the judgment and also made a motion for a new trial, which motion came on for hearing on the 6th day of July, 1933, at which time the arguments and remarks of the court were taken down in shorthand by the court stenographer and which included an oral statement of the court denying the motion for a new trial, which stenographic notes were filed with the clerk of court, but were not transcribed until the 24th day of October, 1933. Thereafter, the defendant applied to the court for an order to show cause why the said notes should not be transcribed and a proper order filed in the office of the clerk of court, so that the time for the running of the statute on appeal might be fixed and why the defendant should not have sixty days from the time of the filing of said order in which to take an appeal therefrom. This motion was also denied and the first question

in the case is, was the lengthy oral statement made by the court in the stenographic record in the proceedings on motion for a new trial such an order that an appeal must be taken therefrom within sixty days after the same was orally made? The minutes of the court during the trial as entered by the clerk are in the record and there is no mention of any such order in the minutes and there was no record of such order except in the shorthand notes of the court stenographer on file.

Section 7939, Compiled Laws 1913, reads as follows: "Every direction of a court or judge made or entered in writing, and not included in a judgment, is denominated an order."

This section is identical with § 7194 of the Idaho Code and in the case of Spivey v. District Ct. 37 Idaho, 774, 219 P. 203, the court said: "It is thus evident that an order must be in writing. It may, however, be made and filed with the clerk, in which event it must be signed by the judge, or it may be entered in writing in the minutes or journal of the court. Perkins v. Loux, 14 Idaho, 607, 95 P. 694, 696."

In the case of Goade v. Gossett, 35 Idaho, 84, 204 P. 670, the trial judge had under consideration a motion for a new trial. He wrote a letter in which, after reciting the submission of the motion to the court and its consideration by him, announced the decision of the court in these words "Motion for new trial will therefore be overruled." The Idaho court cited and quoted the definition of an order and then said: "Applying this definition, it would seem that there is no room for the contention of the appellant that the letter of February 4 was an order from which an appeal could be taken." The appeal made on such alleged order was dismissed.

California has the same statute and in 18 Cal. Jur. 662, the rule is stated as follows: "Orders of a court or judge must be made or entered in writing. Care should be exercised to see that the orders procured are entered in such terms as to express with precision the objects to be attained."

State ex rel. Tibbals v. District Ct. 42 Wyo. 214, 292 P. 897, 71 A.L.R. 993, at page 998 the court said: "The court, it is true, speaks only through its records (State ex rel. Chapman v. Urschel, 104 Ohio St. 172, 135 N. E. 630) and the provisions of the statute that an order of court must be placed of record must be complied with, and will, in the proper cases, as on appeal, be applied and enforced."

20 R. C. L. 512 states the rule as follows: "There is a clear distinction between the making of an order and its entry. The order is made when the court announces it. It is entered when it is placed of record by the clerk. The general rule would seem to be that for most purposes some entry or record of an order is necessary to its completion." The foregoing is quoted with approval by the Michigan court in Freeman v. Wayne Probate Judge, 230 Mich. 455, 203 N. W. 158.

It is the contention of respondent that the statutory definition applies only to orders made in civil actions. It is true that the definition of an order is found in the Code of Civil Procedure, but it is a general definition and states specifically *that an order is "Every direction of a court or judge made or entered in writing,* and not included in a judgment, is denominated an order." Doubtless an oral order may be made in some cases as in the case of United States v. Terry (D. C.) 41 F. 771, where the court ordered the marshal to remove a disorderly person from the court room. This was a case that called for summary action. The offending party was disturbing the proceedings in court by loud and insulting language addressed to the presiding justice.

It is clear that such an important order as that of granting or refusing a new trial should be made a part of the written record and an oral order denying or granting a new trial is not complete until it is reduced to writing, signed by the judge and filed with the clerk of court, or if the order is made in open court, § 10,907, Compiled Laws 1913, makes it the duty of the clerk to enter carefully and correctly in the minutes of such court every ruling or decision of the court upon any matter, by § 10,905 and subd. 1 and 2 of § 10,906 declared to be deemed excepted to and a certified copy of any or all such entries shall be and become a part of the record of said action. If the order is made in open court it is not complete and no part of the record until it is entered in the minutes of the court as provided by § 10,907. Unless it is reduced to writing, signed by the judge and filed with the clerk or entered by the clerk in the minutes of the court as provided by law, there is nothing to appeal from.

The real question in this case, however, can be determined on the appeal from the judgment. During the trial the state offered in evidence a cardboard paper box containing intoxicating liquors, labeled

"This and contents was found by us on the 26th day of May, 1933, at the house in the city of Grand Forks, North Dakota and occupied by _____.

Dated May 26, 1933.                    (Signed) J. M. Lund"

In the lower corner of said exhibit is the notation "6-20-33,

(Signed) C. H. Heen, Clk."

The said box contained 24 compartments in which were six full half pints and one full pint of alcohol and two half pints partly full, five empty half pint bottles. On all of said bottles were marked "State's Exhibit 7" and were labeled as follows: "This bottle and contents were found by me on 26th day of May, 1933, at 306 S. 3rd St. in the city of Grand Forks, North Dakota, and occupied by Rosina Lindeman.

Dated May 26, 1933, 9:45 P. M.          (Signed) J. M. Lund

Joe Blevin

BFB"

That the initials "BFB" are in the handwriting of B. F. Benson, a patrolman of the City of Grand Forks, and husband of Mrs. B. F. Benson, who sat in this case as a member of the jury. This box with contents had been used as an exhibit in a former trial of another case. It was offered by the state in the instant case and an objection to receiving it in evidence was sustained. For some reason it was not separated from the other exhibits and when the jury retired it was sent with the other exhibits to the jury room. There are affidavits of the clerk and of the bailiff and also of the jurors and it is clear from the record that very damaging testimony, that had been excluded by the court, went into the jury room with other exhibits. It is claimed that it was error, under subd. 2 of section 10917 namely: "When the jury has received out of court any evidence other than that resulting from a view of the premises, or any communication, document or paper referring to the case."

The box with its contents, all marked as exhibits, was offered in evidence and an objection to the receipt of such box and exhibits in evidence was sustained by the court. This evidence being ruled out was just as much out of court as though it had never been offered and had never been in the possession of the prosecution. It is only evidence admitted by the trial judge that is evidence in the case in court and

evidence ruled out by the trial judge is out of the case and out of the court. The clerk of the court makes an affidavit that the said exhibits were submitted to the jurors with the other exhibits in the case, retained and returned by the jury into court with the other exhibits in the case when the verdict was rendered. The bailiff in charge of the jury, in an affidavit, states that for some unknown reason to him, or inadvertently, the cardboard paper box, with contents and labels, was taken to the jury room with the exhibits in the case, left with the jury through the entire deliberation and returned with the exhibits into court when the verdict was rendered. Earl Minnie, a juror, states in an affidavit that the box, with contents and labels was received by the jury with the exhibits, remained with them during the entire deliberation and was returned into court with the exhibits; that they were in full view of the jury and were examined by them and some of the jury smelled the liquor and some of them drank some of it. Other jurors state in affidavits that said exhibits were received and remained with the jurors until a verdict was reached and returned with the exhibits in the case. Mrs. B. F. Benson, a juror, stated, in an affidavit, that she is the wife of B. F. Benson, the officer whose initials appear on the exhibits. Earl Minnie made a second affidavit, stating that the foreman took one of the full bottles out of said cardboard paper box, held it up to the juror, Mrs. Benson, and asked her if she denied the signature of her husband. This was in the presence and in view of all of the jurors in the case. A number of the jurors signed a general affidavit stating, in substance, that the verdict was based entirely on the consideration of the testimony given in court and the other exhibits or evidence taken in the jury room were in no way considered or discussed. A number also signed a general affidavit stating that their attention was called to a paper carton, which was stated did not belong in the jury room and the carton and its contents was placed in the cloak room and remained there during the jury's deliberation. That said box, or any of its contents, was not handled by any of the jurors and no conversation was had regarding the box; that none of the jurors drank any of the exhibits. Mrs. B. F. Benson and Earl Minnie did not sign any of the general affidavits and the statement that the initials of the officer on the exhibit were those of the husband of the juror, Mrs. B. F. Benson and the statement that

the foreman held up a bottle and asked her if she denied her husband's signature are uncontradicted.

It is, of course, well settled that jurors cannot impeach their verdict. State v. Forrester, 14 N. D. 335, 103 N. W. 625; Johnson v. Seel, 26 N. D. 299, 144 N. W. 237; Mikkelson v. Snider, 43 N. D. 416, 175 N. W. 220; Cohn v. Wyngarden, 48 N. D. 344, 184 N. W. 575.

Respondent contends that while the jurors cannot impeach their verdict by affidavit that they can sustain it by sworn statements. If it cannot be impeached there is no necessity for sustaining it by the testimony of the jurors and the better reasoning is against the use of affidavits by the jurors to either impeach or sustain the verdict.

In the case of State v. Burke, 124 Wash. 632, 215 P. 31, at page 33 the Washington court said "An affidavit by the jurors to the effect that they were in nowise influenced by the use of the glass is also shown. Clearly, the affidavit of the jurors cannot be considered, under familiar rules. They cannot impeach their own verdict by saying what influenced them in arriving at it, and for the same reasons cannot sustain their verdict by saying they were not influenced by improper matters which came before them." Dartnell v. Bidwell, 115 Me. 227, 98 Atl. 743, 5 A.L.R. 1320.

In the case of People v. Knapp, 42 Mich. 267, 3 N. W. 927, 36 Am. Rep. 438, Judge Cooley said: "It is against public policy to allow the deliberation of a petit jury to be reported. . . . The only proper and just course is to insist upon a rigorous observation of the proper practice, in order to prevent all occasion for injurious suspicions." Statements or affidavits by jurors in support of the verdict is reporting the deliberation of the jury as much as their statements made to impeach the verdict and a report of any of their deliberations for or against the verdict is forbidden by sound public policy. The rule announced by Judge Cooley, namely: "The only proper and just course is to insist upon a rigorous observation of the proper practice, in order to prevent all occasion for injurious suspicions" is a safe rule and its observance is not difficult.

In the instant case the affidavit of the jurors cannot be considered either to impeach or sustain the verdict, but there is the affidavit of the clerk of court and the affidavit of the bailiff who had the jury in charge, that the jurors had the exhibits in their possession during their

.deliberation and that the returned them with the other exhibits in the case when the verdict was returned. It is conceded that this evidence which was excluded by the trial judge was in the possession of the jurors all of the time after they retired until they reached their verdict.

The sole question is, was the receipt of the evidence by the jury prejudicial error. In the case of People v. Cummings, 57 Cal. 88, certain instructions asked by the defendant and refused by the court were sent to the jury room and on conviction of the defendant assigned the receipt of the refused instructions as error. The court said: "That it was error for the Court to permit the jury to take with them the instructions refused, we entertain no doubt. But in this case, it is one of which the defendant cannot complain, because it has not actually prejudiced him, or tended to his prejudice, in respect to a substantial right. If any instructions unfavorable to the defendant, which had been asked by the people and refused by the Court, had been taken out by the jury against the defendant's objection, we think that it might have tended to the prejudice of the defendant in respect to a substantial right. Therefore, the practice is one which we cannot commend in any case." In that case the instructions refused by the court were instructions asked by the defendant himself and were, as a matter of course, favorable to him and could not possibly be prejudicial but the court said if they were instructions asked by the state unfavorable to the defendant and refused by the court then we think it might have tended to the prejudice of the defendant.

Quite similar to the suppositious case advanced by the California court is the case of State v. Burke, 124 Wash. 632, 215 P. 31, supra, one of the jurors discovered what he thought was some fine particles of wood dust on one of the hack saws, presumably those which were contained in the automobile of the defendants and thereupon some or all of the jurors agreed that those were fine particles of dust and said jurors then proceeded to make comparisons with said dust and the wood contained in the sledge handle and for the purpose of further experiment and comparison, the said jurors ordered some sort of magnifying glass which was brought in and delivered to them in the absence of the defendants, and in the absence of counsel for defendants, and based upon the opinion of said jurors they agreed that there

were particles of dust in connection with one of those hack saws and further, came to the scientific conclusions that said dust was of the same wood as the sledge handle; that after discussing said proposition, and based upon said investigation, scientific and otherwise, the said jurors returned a verdict of guilty as to the defendant. In 16 R. C. L. at page 299, it is said, speaking of experiments made by a jury after retiring to consider its verdict: "If the effect of such an experiment is to put the jury in possession of evidence which should have been but was not offered on the trial, it is not permissible, but if the experiment involves merely a more critical examination of an exhibit than had been made of it in the court, there is no ground of objection. ·Where, in a criminal case, experiments by the jurors are made during their deliberations to ascertain facts material to the case, but not included in the evidence, this, in general, constitutes such misconduct as will vitiate their verdict." At page 304 of the same volume it is said "The courts have uniformly condemned as improper the reception of any evidence by the jury in a criminal case outside of that produced at the trial, and whenever there is sufficient ground to suspect that the defendant has been prejudiced by the reception of such evidence, the verdict will be vitiated. It is always improper for a juror to discuss a cause which he is trying as a juror, or to receive any information about it except in open court and in the manner provided by the law."

In the case of Dartnell v. Bidwell, 115 Me. 227, 98 Atl. 743, 5 A.L.R. 1320, supra, there was a motion for a new trial based upon the fact that three photographs which had been offered in evidence by the defendant and excluded by the court were sent to the jury room and were seen and examined by one or more at least of the jurors. So far as appears, neither party was at fault. "The photographs have been exhibited to us, and we think that they were calculated to influence the jury." It is not a question whether the jurors considered them, or were influenced by them. That we can never know. The testimony of jurors concerning their deliberations and proceedings is not admissible. It is not competent for a juror to testify what did or did not influence him. Studley v. Hall, 22 Me. 198; Hovey v. Luce, 31 Me. 346; Greely v. Mansur, 64 Me. 211; Trafton v. Pitts, 73 Me. 408; Whitney v. Whitman, 5 Mass. 405. The photographs were prejudicial, and so

much so as to require a new trial. Benson v. Fish, 6 Me. 141; Rich v. Hayes, 97 Me. 293, 54 Atl. 724; Hix v. Drury, 5 Pick. 296; Alger v. Thompson, 1 Allen, 453.

This is very much like the instant case. The photographs were offered and refused and apparently without the fault of any one, as in the instant case, they were in the possession of the jury and the court was of the opinion that they were calculated to influence the jury. State v. Lantz, 23 Kan. 728, 33 Am. Rep. 215; State v. Mulkins, 18 Kan. 16; State v. Snyder, 20 Kan. 306. See also extensive notes to Com. v. Fisher, 134 Am. St. Rep. 1050; also extensive annotations in 20 A.L.R. 1187 and 67 A.L.R. 1523.

In the case of Ogden v. United States (C. C. A. 3d) 112 F. 523, on the retirement of the jury, an officer of the court handed to them the indictment upon which the defendant was tried, which were taken to the jury room with other papers for their consideration and the indorsements on the back of such indictments were findings of a former jury finding the defendant guilty as charged therein. The court in reversing judgment said: "The fact that the papers with such indorsements upon them were handed to the foreman of the jury, presumably by authority, along with other papers, by an officer of the court, could hardly fail to give to the jury the impression that they were intended for their consideration, and that they were expected to have some weight in forming their verdict. We do not think it was necessary on the part of the defendant below to show that such indorsements had been read by the jurors or any of them. It was a gross violation of the rights of the defendant below that they should have been handed to them at all in the manner in which they were. Trial by jury is properly surrounded by every reasonable safeguard, to insure the absence of any improper influence that might operate upon the minds of the jurors, and give to their verdict the dignity and respect so important to be maintained in the interest of an impartial administration of justice. It was not necessary, therefore, in our opinion, that the defendant below should have gone further than he did, when he showed the presence in the jury room of the indictments with the obnoxious indorsements, and the circumstances under which they came into the possession of the jury."

It is well settled that the reception of any evidence by the jury in a criminal case outside of that produced at the trial will vitiate the verdict. Snow v. State, 91 Tex. Crim. Rep. 1, 237 S. W. 563, 20 A.L.R. 1180, and note in 20 A.L.R. 1202. Case of Thomas v. State, 13 Okla. Crim. Rep. 414, 164 P. 995, it is held that "where evidence introduced at the trial consists in part of the testimony of witnesses given at the preliminary examination and reduced to writing, and such evidence is attached to other written evidence of witnesses examined at the preliminary examination and not produced at the trial, and after retiring to deliberate upon its verdict the jury makes a demand for that portion of such evidence introduced at the trial, the court should see that such evidence is detached from that not introduced before permitting the jury to have it. Where this is not done, and the jury is permitted to have access to that evidence given at the preliminary examination not introduced at the trial, and such evidence is damaging to the defendant, the substantial rights of the defendant have not been properly safeguarded."

In the instant case the defendant is charged with the crime of "engaging in the liquor traffic" on the 3rd day of June, 1933. The original complaint alleges that he had in his possession a small quantity of alcohol on said day and the sheriff's inventory shows that on said day he seized about one and a half ounces of alcohol and this small quantity of alcohol was sent to the jury with the large quantity of alcohol contained in the cardboard paper box and in the circumstances it would unconsciously, if not consciously, affect the jury in this case where the defendant is charged with "engaging in the liquor traffic." The finding of an ounce and a half of alcohol in the possession of the defendant is not much evidence that he was "engaging in the liquor traffic," but when to this is added the alcohol in the cardboard paper box, what may have been uncertain and doubtful would appear to be certain and conclusive. The bottles were marked as exhibits and the labels showed their contents. The name of the owner of the house where the box was found was the same as that of the defendant. It was necessary for the jury to examine the box and its contents to determine its character and whether it was evidence for their consideration. It supplies the occasion for injurious suspicions and it is the

policy of the law to avoid any occasion for outside influence or any occasion wherein it might be said that outside evidence influenced the verdict.

The judgment is reversed and a new trial ordered.

Burr, Ch. J., and Nuessle, Christianson and Moellring, JJ., concur.