[No. 114-3. Division Three. August 6, 1970.]

GLENN L. SNYDER *et al., Respondents*, v. ROBERT E. SOTTA *et al., Appellants.*

*Gavin, Robinson, Kendrick, Redman & Mays* and *Leo C. Kendrick,* for appellants.

*Critchlow, Williams, Ryals & Schuster* and *Rembert Ryals,* for respondents.

MUNSON, J.—Defendants,[1] Robert E. Sotta and wife, appeal from an order granting plaintiffs a new trial following a defense verdict in a malpractice action for injuries suffered by plaintiff Richard Snyder, son of Glenn and Marta Snyder. The malpractice aspect of this case and its concomitant facts are not pertinent to the issue presented for determination.

The trial court's order was based upon the failure of substantial justice. Pursuant to CR 59 (f) the court set forth its reasons in support of the order: (A) Plaintiffs' proposed instructions were (1) inadvertently submitted to, (2) read, and (3) discussed by the jury during their deliberations; (B) three incidents of misconduct by defendants' counsel, so flagrant and prejudicial that plaintiffs were not required to seek a curative instruction or move for a mistrial; and (C) observations made, and comments heard, by the trial

---

[1] Plaintiffs' cause of action against codefendant Prosser Public Hospital District was dismissed and no appeal was taken.

judge during the course of trial, which matters are not contained wholly within the record.

## Dispatch of Plaintiffs' Proposed
## Instructions to the Jury Room

 Affidavits of jurors show that plaintiffs' instructions were inadvertently in the jury room, read by the jury and discussed, along with the court's instructions. Although one of the affiants claims the reading of both sets of instructions caused some confusion, the trial court could only consider the affidavits insofar as the facts of the alleged inadvertence were set forth and not their effect upon the verdict, *Cox v. Charles Wright Acad., Inc.,* 70 Wn.2d 173, 422 P.2d 515 (1967); *State v. Rinkes,* 70 Wn.2d 854, 425 P.2d 658 (1967). From the facts related it is for the court to determine the effect of any inadvertence or misconduct. *State v. Wilson,* 71 Wn.2d 895, 431 P.2d 221 (1967).

 A verdict will generally not be set aside because a paper, which should not be with the jury during their deliberation, has been sent to the jury room through inadvertence or accident, and not through the connivance or design of the prevailing party, unless it appears the paper was of such a character as to prejudice the unsuccessful party or that other circumstances render its reading harmful. *State v. Rinkes, supra; State v. Lindeman,* 64 N.D. 518, 254 N.W. 276, 93 A.L.R. 1442 (1934). Plaintiffs have failed to affirmatively show the presence of either exception.[2]

The trial court stated it was its belief, based upon personal experience and review of the controlling law, that erosion of the normal deliberative process must be presumed when any substantial or foreign matter related to issues before the jury is obtained and perused by them. We do not believe such a strong presumption, per se, is required. In *State v. Rinkes, supra* at 862 the court states:

---

[2]At best, plaintiffs argue that the jury became aware of the fact plaintiffs had requested instructions which were in part refused; thus the jury was allowed to infer the court opposed plaintiffs in certain areas of their case, most notably that of causation.

This court has stated that consideration of any material by a jury not properly admitted as evidence vitiates a verdict when there is a reasonable ground to believe that the defendant may have been prejudiced.

The content of the document must be examined by the court in determining any possible prejudicial effect. In this instance, we believe the jury would have realized a mistake had been made, that they were to consider only the court's instructions; all without any subliminal effect attributable to the presence of plaintiffs' proposed instructions. If this were the only ground upon which the trial court granted the new trial, we would be inclined to reverse its order. However, this is but one factor to be considered in the totality of circumstances which support the granting of plaintiffs' motion.

### Misconduct of Counsel

The second ground for granting plaintiffs' motion is alleged acts of misconduct by defendants' counsel, so flagrant and prejudicial that plaintiffs were not required to seek a curative instruction or mistrial. The first of these instances occurred during the cross-examination of plaintiffs' witness, wherein defense counsel referred to a conclusion contained in a medical report, which was adverse to plaintiffs' theory even though it was previously determined by the court that conclusions contained in such reports would not be admissible unless the individual rendering same was present for the opposing party to cross-examine. The second instance involves defense counsel's continued questioning over sustained objections to his proposed questions.

Following the second instance of misconduct, the trial court offered plaintiffs the opportunity to move for a mistrial. Plaintiffs declined stating:

[U]nfortunately, Judge, the posture of this case is such that we just don't deem that we can afford to make such a motion. We would like to have it so declared, but we will not make the motion.

The misconduct of defendants' counsel lies not in the asking of questions but rather in persevering and ask-

ing questions to which objections had been previously sustained. The proper procedure upon the sustaining of an objection is to present the anticipated response by an offer of proof outside the presence of jury—not by continuing to question in a vein held objectionable by the court. *Shaw v. Prudential Ins. Co. of America,* 166 Wash. 652, 8 P.2d 431 (1932). To persist after the court's ruling is error and may be prejudicial error. However, by refusing to make the motion for mistrial, solicited by the trial court, plaintiffs waived their right to subsequently claim a mistrial as to either occurrence of misconduct up to that time. *Nelson v. Martinson,* 52 Wn.2d 684, 328 P.2d 703 (1958); *Casey v. Williams,* 47 Wn.2d 255, 287 P.2d 343 (1955); *Sun Life Assurance Co. of Canada v. Cushman,* 22 Wn.2d 930, 158 P.2d 101 (1945).

The third incident of misconduct occurred during defendants' examination of their witness, Dr. Smith, when, after testifying he had examined plaintiff Richard Snyder, he was asked the results of his examination. Plaintiffs objected —claiming the examination had been conducted without their permission. At this point, the weekend recess was taken. The objection was discussed at the beginning of the session on the following Monday morning whereupon plaintiffs' counsel advised the court in discussing this objection:

> Mr. Kendrick's questions have by and large been general questions counsel feels, and the problem hasn't really arisen, but it could arise. The court could make it clear to the doctor that he has to relate his summary to the history, and even if he can't do that completely, he, at least, is not to advise the jurors, innocently or otherwise, that he did see the child.

Once again, no motion for mistrial was forthcoming from plaintiffs.

At no time during the entire 7-day trial did plaintiffs move for a mistrial. Only after an adverse verdict do plaintiffs urge a new trial by reason of misconduct. Plaintiffs allege the reason for their refusal to accept the court's solicitation for a mistrial motion, or to seek one on their own initiative, was the difficulty they would experience in

procuring their medical testimony at a future trial. Yet, this was exactly the same position in which plaintiffs found themselves when they made their motion for a new trial since the posture of the availability of witnesses had not changed. Consequently, this exercise of judgment by plaintiffs must be deemed to be an instance of "gambling on the verdict." We do not believe the exception of flagrant and prejudicial misconduct under *Warren v. Hart,* 71 Wn.2d 512, 518, 429 P.2d 873 (1967) or *Carabba v. Anacortes School Dist. 103,* 72 Wn.2d 939, 435 P.2d 936 (1967) is applicable.

Plaintiffs cite a fourth instance of alleged misconduct but it pertains to a query by counsel for Prosser Public Hospital District, who is not a party to this appeal. Therefore, it will not be considered.

## Observations and Comments Outside the Record

The third reason in support of the trial court's order relates to matters not entirely of record but cited in the trial court's oral opinion upon the granting of the motion which in part is as follows:

> I want the parties to know that I conferred at length with counsel on the day of the trial concerning who would try the case. Judge Lawless was tied up with an extremely long criminal case. A visiting judge was sent in to help us, and he was available and on the scene. I asked that counsel consider using the visiting judge because I knew some of the defendant principals personally. I knew the parents of the plaintiff Snyder, and I knew the defendants. I knew all of these people on only a one-contact basis, but I knew the feelings would be strong, and I felt the Court's general usefulness would be best served by using a judge from another community. However, one of the attorneys insisted on his right to proceed, and stated that he would file a Motion and Affidavit of Prejudice against the visiting judge, and I felt that he had a right to do so. This was one of the plaintiff's attorneys.
>
> We proceed to trial. The only problem that was created was that which I suspected; that there was a great deal of hard feelings on the part of litigants, and much of that

was ultimately directed against the Court. I'm sure that it often happens in a situation like this, but it is a bitter experience in a small community.

. . .

Additionally, I am certain that since at least the third day of trial it has been coffee-cup conversation in this locale that I, as the judge, am prejudiced against one side, both for the reasons of feelings residual and contra-antagonistic in the community, (which feelings a trial judge cannot afford to have), and, because on that third day or thereabouts, I was forced to warn counsel for the defendant that there would probably be a need for a new trial if the scales were tipped by further injections into the case of certain matter. I did this rather forcefully, and it got good circulation.

. . .

As I said earlier, there were numerous occasions of injecting inadmissible and highly prejudicial matters into the consciousness of the jury. These actions were obviously telling on the jury, as demonstrated in the expressions of puzzlement as we continued to send them out at each repeated occurrence. It was frequently demonstrated by furtive glances at plaintiff's counsel and at the plaintiff parents. It was a logical concern bound to follow from the necessary removal of the jury panel on each such occasion. I am certain that, in the ordinary experience of human beings such interruptions would be followed by additional suspicion and concern on the part of the jurors when we created a void by not refusing to admit the improperly proferred [sic] proof. The repetitious withholding of what would seem to a layman to be probative evidence in a trial where the principal issue is the good faith and veracity of the two principal parties couldn't help but have a telling effect on a jury. . . .

Having in mind the rather careful but consistent efforts to encourage fairness, as evidenced by our Supreme Court in recent years, it would seem that it is the trial court's duty to avoid, whenever possible, pedantic mechanism which ultimately aggravates the suspicion of jurors. By instructing them that "the law does not permit an answer" or that they "are to disregard a question", the Court sometimes merely emphasizes the offensive material. Such practices, when made necessary by the overt and repetitive and seemingly righteous questions or com-

ments by offering counsel, do nothing but fertilize the poisoned vine and propagate its fruit.

In addition, at the time of ruling upon the objection raised during Dr. Smith's testimony on Monday morning, the court remarked as follows:

> As of Friday afternoon, gentlemen, I had before me the specter of overhearing the remark made by a juror going up the stairs as I was standing going out of my back chambers, and I hear a juror say "well, apparently we are not going to get to hear much of this case." Now, whether that alluded to the times we have had to send them out while arguing matters, or whether it refers to something else, I don't know. Maybe they thought our recess had to do with settlement or taking it away from the jury or something, but at least I was concerned.

We have also considered portions of the record, made outside the presence of jury, wherein the trial judge made comments on one occasion accusatory of defense counsel's supposed pettifogging and on another occasion advised him to have some responsible member of his firm associated with him for the balance of the trial. Furthermore, counsel for both parties agree that "the record itself indicates the length and, to some extent, the bitterness of the ordeal. Only those present at the trial however can attest to its heat." The verve and piquancy of trial counsel radiates from the cold record. From the record, it is evident the rapport between the trial court and counsel, while involving matters heard outside the presence of the jury, deteriorated to the point of being rancorous; the aura of which must have been transmitted to the jury. This is supported, not by a mere feeling from the case, but by the trial court's observations of the jury members and one juror's comments. Trautman, *New Trials for Failure of Substantial Justice,* 37 Wash. L. Rev. 367, 398 (1962). We gather from a reading of the entire record and the oral opinion of the court that this is one of those rare instances spoken of by Justice Finley in *Knecht v. Marzano,* 65 Wn.2d 290, 396 P.2d 782 (1964), wherein a fair trial was not had by either party. It is not a case where the trial judge merely disa-

greed with the jury's verdict. We have no doubt that had the jury's verdict been in favor of plaintiffs, the defendants would be here urging the same arguments as now made by plaintiffs as grounds for mistrial.

■ As stated in *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 440, 397 P.2d 857 (1964):

> The basic question posed by an order granting a new trial upon this ground [failure of substantial justice], be it a civil or criminal action, is whether the losing party received a fair trial. *State v. Taylor, supra* [60 Wn.2d 32, 371 P.2d 617 (1959)]. And, it is in this area of the new-trial field that the favored position of the trial judge and his sound discretion should be accorded the greatest deference, particularly when it involves the assessment of occurrences during the trial which cannot be [adequately] made a part of the record, other than through the voice of the trial judge in stating reasons for the action taken.
>
> If the trial judge, in the exercise of his best judgment determines that a fair trial has not been had, he has the alternative, in an appropriate situation, of granting a partial, a conditional, or an unconditional new trial. This decision, in turn, calls for a weighing of factors and values such as the complexity of the issues, the length of the trial, the degree and nature of the prejudicial incidents, the nature and amount of the verdict, the cost of retrial, the probable results, the desirability of concluding litigation, and such other circumstances as may be apropos to the particular situation.

Furthermore, where issues upon which the new trial order are based do not involve purely legal questions, the granting of a new trial is a matter of discretion with the trial court and its ruling will not be disturbed by an appellate court except where there is a manifest abuse of such discretion. *Bohnsack v. Kirkham*, 72 Wn.2d 183, 432 P.2d 554 (1967); *Worthington v. Caldwell*, 65 Wn.2d 269, 396 P.2d 797 (1964); 4 Orland, Wash. Prac. 390-91 (2d ed. 1968).

We are satisfied the trial court in the instant case did not manifestly abuse its discretion in granting a new trial. Although reasons (A) and (B) assigned for granting the new trial motion do not, in themselves, sustain the order, when

taken into consideration with the other matters set forth above, it is evident the trial court was justified in granting a new trial. Accordingly, the order is affirmed.

Defendants' contention with regard to the sufficiency of plaintiffs' evidence to support a jury verdict was not set out under "Assignments of Error", in compliance with CAROA 43, but under "Argument of Counsel". However, during our review of the record, we considered this issue and find the trial court was correct.

Likewise, plaintiffs' contention that the trial court erred in failing to hold defendant negligent as a matter of law is not properly before us for consideration since plaintiffs failed to cross-appeal pursuant to CAROA 33 (3).

Neither party shall recover costs on this appeal.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied September 24, 1970.

Review denied by Supreme Court October 28, 1970.